LEWIS, CLIFTON & NIKOLAIDIS, P.C.
275 Seventh Avenue, Suite 2300
New York, NY 10001-6708
Telephone: (212) 419-1500
*Attorneys for Plaintiff Beth Hernandez*

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
————————————————————x

| | |
|---|---|
| BETH HERNANDEZ, | 06 CV 13314(GEL) |
| Plaintiff, | **FIRST AMENDED COMPLAINT AND JURY DEMAND** |
| -against- | |
| INTERCOS AMERICA, INC., | |
| Defendant. | |

————————————————————x

Plaintiff Beth Hernandez, by her attorneys, Lewis, Clifton & Nikolaidis, P.C., alleges as follows:

### NATURE OF ACTION

1. Plaintiff Beth Hernandez ("Hernandez") alleges that her former employer, Intercos America, Inc. ("Intercos") unlawfully terminated her employment in violation of the Family Medical Leave Act of 1993 ("FMLA"), 29 U.S.C. §2601 et seq. On January 6, 2006, Hernandez notified Intercos that she had been diagnosed with bronchitis, sinusitis, a panic disorder and depression, and was under doctor's orders not to return to work until January 16, 2006. Shortly after receiving this notification, Intercos terminated her employment. Hernandez also alleges that Intercos failed to pay her 2005 performance bonus in violation of New York common law.

**JURISDICTION**

2.     Jurisdiction is conferred upon the court pursuant to 28 U.S.C. § 1331, and the FMLA, 29 U.S.C. § 2601 et seq.  The supplemental jurisdiction of the court is also invoked.

3.     Venue is proper in this District because a substantial part of the events giving rise to the unlawful employment practices occurred within the Southern District of New York.

**PARTIES**

4.     Hernandez resides at 1017 Southwest Coleman Avenue, Port St. Lucie, Florida 34953.

5.     Intercos has offices at 37 West 57th Street, Suite 901, New York, New York 10019 ("Manhattan office"), and 200 Route 303 North, Congers, New York 10920 ("Congers office").

**FACTS UNDERLYING ALL CAUSES OF ACTION**

6.     Hernandez is "an eligible employee" as defined by the FMLA in that she worked for a covered employer at least 1,250 hours during the 12 months immediately preceding the start of her leave and was employed at a work site with at least 50 workers at the site or within 75 miles of the site.

7.     Intercos is a corporation which creates, develops and produces make up (lipsticks, powders, coloured emulsions and cosmetic pencils) for the cosmetic industry's largest retailers.  Intercos is a "covered employer" within the meaning of the FMLA in that it is a private employer which employs 50 or more employees.

8.     Hernandez was hired by Intercos on September 27, 2004, in the title

of Operational Marketing Executive. Her duties and responsibilities as Operational Marketing Executive included developing and launching new products, creating and approving all bills of materials, price lists and item masters, updating bi-weekly budget reports, monitoring sales and order acquisitions and regularly meeting with customers locally and abroad.

9. In or around February 2005, Hernandez was promoted to the title of Team Leader. In this role Hernandez performed all of the duties of Operational Marketing Executive, and supervised the work of seven employees, trained new employees, and created a portfolio and template for new projects. Hernandez reported to Paulyne Wang ("Wang"), Operational Marketing Manager. Wang reported to Morena Genziana ("Genziana"), General Manager of Intercos. Wang and Genziana have offices in the Manhattan office and the Congers office of Intercos.

10. Hernandez worked in the Congers office and in the Manhattan office. Hernandez met with Wang, Genziana and clients in Manhattan. Trainings and other meetings were also held at the Manhattan office.

11. In August 2005, Hernandez was involved in a three brand launch for Revlon. Revlon executives complimented Hernandez on her work, stating that never before had Intercos flawlessly launched a Revlon product.

12. On September 6, 2005, Intercos informed Hernandez that she had been selected to be part of Intercos' Incentive Plan for the year 2005 by reason of her achievement of common and individual goals. Intercos' Incentive Plan provided that Hernandez was entitled to a bonus in the amount of 7% of her annual gross salary.

13. In or around October 2005, Intercos advised Hernandez that she had been

selected for promotion to Wang's position of Operational Marketing Manager.  To ensure a successful transition to the new position, Wang trained Hernandez twice a week for three or four weeks in or around November 2005.

14. By memorandum dated December 27, 2005, Intercos announced that all employees were to work from 7:00 a.m. until 7:00 p.m. from Monday, January 2, 2006, through Sunday, January 8, 2006, to participate in a physical inventory of Intercos' warehouse.  The memorandum further provided that if employees did not work the mandatory hours each day, disciplinary action would be taken.

15. When Hernandez advised Wang that she could not meet the 7:00 a.m. schedule because her child care provider was not available until 8:00 a.m., Wang told Hernandez "not to worry" and to "do your best."  When Hernandez arrived at 8:30 a.m. on January 2, 2006, however, she was confronted by Michelle DelValle ("DelValle"), Intercos' Human Resources Director, and Anne Hayden ("Hayden"), Intercos' Controller, who asked  Hernandez if she had received the memorandum.  Hernandez explained that Wang had approved her "late" arrival.  Hayden and DelValle said that they had no knowledge of this and would contact Wang.

16. Hernandez reported to the warehouse on January 2, 3, and 4, 2006.  At the same time she was working on inventory in the warehouse, Hernandez' responsibility for handling Intercos' most important accounts (Revlon, Procter & Gamble, Target and New Style) and for new product development (Amway and Intermark) continued.  During this time period, Hernandez was also supervising seven employees and handling Wang's responsibilities while Wang was in China on business.  Hernandez began to experience mental stress and respiratory problems.

17. On January 5, 2006, Hernandez was assigned to a sales and operational training at Intercos' Manhattan office. While at the training, her breathing problems and stress level became increasingly worse.

18. After leaving work on January 5, 2006, Hernandez sought medical treatment by contacting Rosaura Linsalato, L.C.S.W. On January 6, 2006, Hernandez received a second opinion from her primary care physician, David R. Dorf, M.D. Dr. Dorf diagnosed Hernandez with bronchitis, sinusitus, a panic disorder and depression. He prescribed medication and advised Hernandez that she was not fit to return to work until January 16, 2006.

19. On January 6, 2006, Hernandez notified Intercos in writing of her serious health condition as well as her doctor's orders not to return until January 16, 2006. Hernandez' medical condition qualified as a serious health condition under the FMLA because Hernandez was incapacitated for more than three consecutive calendar days and received continuing treatment by a health care provider.

20. While at home recuperating, Hernandez received a letter from Hayden, dated January 6, 2006, stating that her employment was terminated effective January 6, 2006.

21. The reason given by Intercos for terminating Hernandez' employment was "poor job performance over the last several months."

## AS AND FOR A FIRST CAUSE OF ACTION
(FMLA violation)

22. Plaintiff hereby repeats and realleges each allegation contained in paragraphs 1 through 21 above.

23. By its aforedescribed actions, defendant violated the FMLA, 29 U.S.C.

§2615(a)(1) by interfering with and restraining Hernandez' exercise of her rights under the FMLA.

## AS AND FOR A SECOND CAUSE OF ACTION
### (Retaliation under the FMLA)

24. Plaintiff hereby repeats and realleges each allegation contained in paragraphs 1 through 23 above.

25. By its aforedescribed actions, defendant violated the FMLA, 29 U.S.C. §2601 et seq., by terminating Hernandez' employment in retaliation for Hernandez' taking FMLA covered leave.

## AS AND FOR A THIRD CAUSE OF ACTION
### (Breach of contract)

26. Plaintiff hereby repeats and realleges each and every allegation contained in paragraphs 1 through 25 above.

27. Plaintiff and Intercos were parties to an employment agreement.

28. By failing to properly compensate plaintiff for her performance bonus, defendant violated the agreement, which constitutes a breach of contract.

WHEREFORE, plaintiff demands judgment against defendant Intercos America, Inc. as follows:

1. Granting actual damages for loss of wages, benefits and promotional opportunities and bonuses in an amount equivalent to what Hernandez would have earned had her employment not been terminated;

2. Granting an award of damages for plaintiff's 2005 performance bonus;

3. Granting prejudgment interest;

        4.        Granting liquidated damages;

        5.        Granting front pay, or in the alternative, reinstatement to an appropriate position;

        6.        Granting costs and disbursements, including reasonable attorney's fees, and;

        7.        Granting such other and further relief which the Court may deem just and proper.

## **DEMAND FOR A JURY TRIAL**

Plaintiff hereby demands a trial by jury of all issues so triable.

Dated: New York, New York
       January 8, 2007

                                        LEWIS, CLIFTON & NIKOLAIDIS, P.C.

                                        /s/ Elaine Smith
                        By:_____
                            Elaine Smith (ES 0214)
                            275 Seventh Avenue, Suite 2300
                            New York, New York 10001